UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

_____
                                                    )
UNITED STATES OF AMERICA,            )
                                                    )
        Plaintiff,                               )
                                                    )        Civil Action No. 3:10-cv-00044-JPG-CJP
        v.                                        )
                                                    )
LAFARGE NORTH AMERICA, INC.,     )
LAFARGE MIDWEST, INC., and         )
LAFARGE BUILDING MATERIALS, INC.,  )
                                                    )
        Defendants.                          )
_____  )

## COMPLAINT

        The United States of America, by the authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency ("EPA"), alleges:

## NATURE OF THE ACTION

        1.        This is a civil action brought against Defendants, Lafarge North America Inc.,

("Lafarge"), and its wholly-owned subsidiaries Lafarge Midwest, Inc. ("Lafarge Midwest") and

Lafarge Building Materials Inc. ("Lafarge Materials") (collectively, "Defendants"), pursuant to

Sections 113(b) and 167 of the Clean Air Act ("Clean Air Act" or "the Act"), 42 U.S.C. §§

7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of one

or more of the following statutory and regulatory requirements of the Act at one or more

Portland cement plants owned and/or operated by each of the Defendants:  the Prevention of

Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-7492; the

nonattainment New Source Review ("nonattainment NSR") provisions of the Act, 42 U.S.C. §§ 7501-7515; the federally-approved and enforceable state implementation plans ("SIPs"), which incorporate and/or implement the above-listed federal PSD and/or nonattainment NSR requirements; and Title V of the Act, 42 U.S.C. §§ 7661-7661f.

2.      The United States seeks an injunction ordering the Defendants to implement remedial measures and operational improvements needed to comply with the above-cited Clean Air Act requirements and regulations promulgated thereunder and civil penalties for each Defendant's past and ongoing violations.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of the subject matter herein, pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

4.      Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a).

## NOTICES

5.      EPA has provided notice of the violations alleged herein to the Defendants, to each of the states where the Portland cement plants identified in this Complaint are located, and to the Puget Sound Clean Air Agency, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a).

6.      More than thirty days have elapsed since the notice referred to in the preceding paragraph.

2

7.      The United States has provided notice of the commencement of this action to each state where a Portland cement plant identified in this Complaint is located, and to the Puget Sound Clean Air Agency, in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b).

THE DEFENDANTS

8.      Lafarge is a Maryland corporation, Lafarge Midwest is a Delaware corporation and Lafarge Materials is an Alabama corporation.  Lafarge Midwest and Lafarge Materials are wholly-owned subsidiaries of Lafarge.  Each Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

9.      At times relevant to this Complaint:

    a.  Lafarge has owned and operated Portland cement plants located in or near Whitehall, Pennsylvania; Paulding, Ohio; Sugar Creek, Missouri; Buffalo, Iowa; and Seattle, Washington.

    b.  Lafarge Midwest has owned or operated Portland cement plants located in or near Fredonia, Kansas; Alpena, Michigan; and Grand Chain, Illinois;

    c.  Lafarge Materials has owned and operated Portland cement plants located in or near Ravena, New York; Calera, Alabama; Tulsa, Oklahoma; Harleyville, South Carolina; and Atlanta, Georgia.

STATUTORY AND REGULATORY BACKGROUND

The National Ambient Air Quality Standards

10.      Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for certain criteria air pollutants.  The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be

3

adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. Pursuant to Section 109, 42 U.S.C. § 7409, EPA has identified and promulgated NAAQS for sulfur dioxides ("SO$_2$") and nitrogen dioxide ("NO$_2$"), a form of nitrogen oxides ("NO$_x$"), and ozone as such pollutants. 40 C.F.R. §§ 50.4, 50.5, 50.9, 50.10, and 50.11.

11.     Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

12.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. Designations that have been approved by EPA are set forth at 40 C.F.R. Part 81. An area that meets the NAAQS for a particular pollutant is designated as an "attainment" area with respect to such pollutant. An area that does not meet the NAAQS for a particular pollutant is designated a "nonattainment" area with respect to such pollutant. An area that cannot be designated for a particular pollutant due to insufficient data is termed "unclassifiable" with respect to such pollutant.

The Prevention of Significant Deterioration Requirements

13.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for those areas designated as either attainment or unclassifiable for purposes of attaining the NAAQS standards.   These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only

4

after careful evaluation of all the consequences of such a decision and after public participation in the decision-making process.

14.    Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and subsequent operation of a major emitting facility in an area designated as attainment or unclassifiable unless a PSD permit that comports with the requirements of Section 165 has been issued and the facility employs the best available control technology ("BACT") for each pollutant emitted from the facility that is subject to regulation under the Act. Portland cement plants with the potential to emit one hundred (100) tons per year ("tpy") or more of any air pollutant are "major emitting facilities" in accordance with Section 169(1) of the Clean Air Act, 42 U.S.C. § 7479(1), which defines "major emitting facility" for certain listed stationary sources, including Portland cement plants.

15.    Sections 110(a) and 161 of the Act, 42 U.S.C. §§ 7410(a) and 7471, require each state to adopt a SIP that contains emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas designated as attainment or unclassifiable.

16.    A state may comply with Sections 110(a) and 161 of the Act by being delegated by EPA the authority to enforce the federal PSD regulations set forth at 40 C.F.R. § 52.21, or by having its own PSD regulations approved as part of its SIP by EPA. State PSD regulations must be at least as stringent as those set forth at 40 C.F.R. § 51.166. Each of the states at issue in this matter has had, at relevant times, either a delegated or an approved PSD program. All citations herein to the provisions of 40 C.F.R. § 52.21 are to the provisions of 40 C.F.R. § 52.21 as they appeared at times relevant to the claims in this Complaint.

5

17.     Under the PSD regulations, "major stationary sources" is defined, *inter alia*, as Portland cement plants which emit or have the potential to emit 100 tpy or more of any regulated air pollutant.  40 C.F.R. § 52.21(b)(1)(i)(a).

18.     As set forth at 40 C.F.R. § 52.21(i)(1) (currently 40 C.F.R. § 52.21(a)(2)(iii)), any major stationary source in an attainment area that intends to construct a major modification must first obtain a PSD permit.  "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any pollutant subject to regulation under the Act.  "Significant" is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emission increase or increase in the potential of a source to emit any of the following pollutants, as a rate of emissions that would equal or exceed any of the following:  40 tpy for $NO_x$, and 40 tpy for $SO_2$.

19.     As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major modification in an attainment area shall apply BACT, as defined at 40 C.F.R. § 52.21(b) and 42 U.S.C. § 7479(3), for each pollutant subject to regulation under the Act for which the modification would result in a significant net emissions increase.  The PSD regulations further require, among other things, that any application for a PSD permit must be accompanied by an analysis of ambient air quality in the area (40 C.F.R. § 52.21(m)) and that the owner or operator of a proposed source or modification must submit all information necessary to perform any analysis or make any determination required under 40 C.F.R. § 52.21.  40 C.F.R. § 52.21(n).

20.     Pursuant to the PSD regulations, any owner or operator who commences construction or modification of a major stationary source without applying for and receiving

6

approval for such construction or modification is in violation of the Act.  40 C.F.R. § 52.21(r)(1). *See also* 40 C.F.R. § 52.23.

The Nonattainment New Source Review Requirements

21.     Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth requirements in areas designated nonattainment for the NAAQS.  Sections 110(a)(2)(C) and (I) of the Act, 42 U.S.C. §§ 7410(a)(2)(C) and (I), require that each SIP contain a program meeting the requirements of Part D of the Act for the preconstruction review and permitting of new and modified stationary sources located in areas designated as "nonattainment" for a criteria pollutant pursuant to Section 107(d) of the Act, 42 U.S.C. § 7407(d).

22.     Part D sets forth attainment dates and SIP submission dates, as well as the requirement that each SIP in a nonattainment area must be approved by EPA.  The nonattainment NSR permitting program requirements are set forth in Section 173 of the Act, 42 U.S.C. § 7503, and in the implementing regulations at 40 C.F.R. §§ 52.24, 51.165, and Part 51, Appendix S. The nonattainment NSR requirements include a permit program that authorizes permits to construct, modify, or operate major sources or major modifications in nonattainment areas only if in accordance with regulations issued by EPA, including the following requirements that:  a) the source demonstrate sufficient emission offsets; b) the source complies with the lowest achievable emission rate ("LAER"); c) the owner or operator of the proposed source demonstrates that all of its major sources within the state are in compliance with their emission limits; d) the nonattainment provisions of the SIP are being properly implemented by the state; and e) an analysis of alternative sites, sizes, production processes and environmental controls has been considered and the benefits of the proposed source outweigh the environmental social costs imposed as a result of the construction or modification.  A major source proposing to construct

or make a modification in a nonattainment area may be allowed to construct or modify only if these requirements (as set forth more specifically in the regulations) are met. These requirements are referred to herein as the "nonattainment NSR regulations."

23.     At relevant times, the nonattainment NSR regulations at 40 C.F.R. §§ 52.24, 51.165 and Part 51, Appendix S, have defined "major stationary source" to include, *inter alia*, any stationary source of air pollutants which emits, or has the potential to emit, 100 tpy or more of any pollutant subject to regulation under the Act or any physical change that would occur at a stationary source not otherwise qualifying as a major stationary source, if the change would constitute a major stationary source itself.

24.     At relevant times, under the nonattainment NSR regulations, "major modification" has been defined at 40 C.F.R. §§ 52.24(f)(5)(i), 51.165(a)(1)(v)(A) and Part 51, Appendix S, II. A.5.(i) as meaning, any physical change or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under the Act.

25.     At relevant times, under the nonattainment NSR regulations, "significant" has been defined at 40 C.F.R. §§ 52.24(f)(10), 51.165(a)(1)(x)(A) and Part 51, Appendix S, II. A.10., and under the nonattainment NSR regulations as meaning a rate of emissions that would equal or exceed any of the following: for $NO_x$, 40 tpy; for $SO_2$, 40 tpy.

26.     A state or regional air authority must comply with Sections 172 and 173 of the Act, 42 U.S.C. §§ 7502 and 7503, by having its own nonattainment NSR regulations, which must be at least as stringent as those set forth at 40 C.F.R. § 51.165 and approved by EPA as part of its SIP.

<u>Title V Permit Requirements</u>

27.     Title V of the Act, Sections 501-507, 42 U.S.C. §§ 7661-7661f, establishes an

operating permit program for certain sources, including "major sources" and any other source

required to have a PSD permit.  Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

28.     Pursuant to Section 502(b) of the Act, 42 U.S.C. § 7661a(b), on July 21, 1992,

EPA promulgated regulations implementing the requirements of Title V and establishing the

minimum elements of a permit program to be administered by any air pollution control agency.

57 Fed. Reg. 32250 (July 21, 1992).  These regulations are codified at Part 70.

29.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. 70.7(b) have at all

relevant times made it unlawful for any person to violate any requirement of a permit issued

under Title V or to operate a subject source except in compliance with a permit issued by a

permitting authority under Title V.

30.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), and 40 C.F.R. §§ 70.7(b) and

70.6(a) have at all relevant times required that each Title V permit include, among other things,

enforceable emission limitations and such other conditions as are necessary to assure compliance

with applicable requirements of the Act and the requirements of the applicable SIP.  These

requirements include any PSD and nonattainment NSR requirements, including the requirement

to comply with an emission rate that meets BACT and/or LAER.

31.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), provides that any person

required to have a Title V permit must submit to the permitting authority a compliance plan

describing how the source will comply with all applicable requirements and an application for a

permit signed by a responsible official who must certify the accuracy of the information

submitted.

32.     The federal Title V regulations at 40 C.F.R. § 70.5 have at all relevant times required any owner or operator of a source subject to Title V permitting requirements to submit a complete permit application, which, among other things, identifies all applicable requirements (including any relevant PSD and nonattainment NSR requirements and the requirement to meet BACT pursuant to PSD and LAER pursuant to nonattainment NSR), certifies compliance by a responsible official with all applicable requirements with which the source is in compliance, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

33.     Where a Title V permit application contains incorrect information or additional requirements become applicable to the source following submission of an initial permit application but prior to release of a draft permit, a Title V permit applicant is required to submit supplementary facts or corrected information as necessary to the permitting authority.  40 C.F.R. § 70.5(b).

34.     All of the states have fully approved Title V programs which include regulations that are in accordance with the Federal Title V regulations.

<u>ENFORCEMENT PROVISIONS</u>

35.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator of EPA may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); the nonattainment NSR requirements at Part D of Title I of the Act, 42 U.S.C. §§

10

7501-7515; Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or the PSD and nonattainment NSR requirements of each relevant state SIP.

36.      Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator of EPA to initiate a judicial enforcement action for permanent or temporary injunction and/or for a civil penalty against any person whenever such person has violated, or is in violation of, *inter alia*, the requirements or prohibitions described in the preceding paragraph.  Pursuant to Section 113(b), 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the Administrator of EPA may seek civil penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

37.      Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator of EPA to initiate an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility which does not conform to the PSD requirements in Part C of the Act.

FIRST CLAIM FOR RELIEF
(PSD/Nonattainment NSR Violations)

38.      Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39.      Defendants produce and/or at relevant times have produced cement at each of the Portland cement plants listed in paragraph 9 by, among other things, burning raw materials in a kiln.

40.     Each of the plants identified in paragraph 9 at relevant times has been a major emitting facility and major stationary source subject to the PSD or the nonattainment NSR requirements of the Act identified above.

41.     EPA has conducted investigations of Defendants' plants, which included review of permitting history and emissions data, and analysis of other relevant information obtained from the Defendants concerning construction and operation of the plants. The United States alleges the following based on the results of EPA's investigations, information, and belief.

42.     Since the initial construction of the plants referred to in paragraph 9, one or more of each Defendant's plants identified in paragraph 9 has undergone a major modification within the meaning of the PSD or nonattainment NSR provisions. Such major modifications have resulted in a significant net emissions increase of $NO_x$ and/or $SO_2$. On information and belief, these modifications include, but are not necessarily limited to, a change in the method of operation by changing the fuel type at: the Lafarge Midwest Joppa facility in Grand Chain, Illinois in or around 1995; the Lafarge North America Seattle facility in Seattle, Washington in or around 1986; and the Lafarge Building Materials Ravena facility in Ravena, New York in or around 1984.

43.     Following the major modifications referred to in paragraph 42, or the commencement of their ownership and operation of the plant after such major modification, each of the Defendants have been in violation of either:

        a.   Section 165(a) of the Clean Air Act, 42 U.S.C. § 7475(a), and 40 C.F.R. §

             52.21, and the corresponding SIP for PSD, by failing to undergo PSD review

             for major modifications which caused significant net emissions increases of

12

NO$_x$ and/or SO$_2$, by failing to obtain a PSD permit, and by failing to install
and operate BACT for control of such air pollutants; or

   b.  the nonattainment NSR permitting programs that EPA implements pursuant to
section 110(a)(2)(C) and (I), 42 U.S.C. § 7410(a)(2)(C) and (I), and 40 C.F.R.
§ 52.24, 40 C.F.R. § 51.165 and 40 C.F.R. Part 51, Appendix S, or which
EPA has approved as part of applicable SIPs pursuant to the foregoing
provisions, in one or more of the following ways:  by failing to apply for and
obtain necessary permits prior to construction, by failing to provide complete
and accurate information in its permit applications regarding the impact of
proposed construction on emissions levels or air quality, by failing to install
and operate LAER for the control of NO$_x$ and/or SO$_2$ and/or by failing to
obtain and operate with federally enforceable emissions offsets at least as
great as the modified source's emissions.

44.    Unless restrained by an Order of the Court, these violations of the Act and the
implementing regulations are likely to continue.

45.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of
the Act (for PSD violations), 42 U.S.C. § 7477, and pursuant to the Federal Civil Penalties
Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40
C.F.R. § 19.4, the violations set forth above subject each Defendant to injunctive relief and civil
penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up
to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and
including March 15, 2004; up to $32,500 per day for each such violation occurring on or after

March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each

such violation occurring after January 12, 2009.

SECOND CLAIM FOR RELIEF

(Title V Violation – Operation with a Deficient Permit)

46.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

47.     At all times relevant to this Complaint, one or more of each of Defendants' plants

identified in paragraph 9 has been a "major source" within the meaning of Section 501(2) of the

Act, 42 U.S.C. § 7661(2), the federal implementing regulations at 40 C.F.R. § 70.2 and

applicable state Title V regulations.

48.     As set forth in paragraph 42, above, one or more of each of the Defendants' plants

identified in paragraph 9 has undergone a major modification within the meaning of the PSD or

nonattainment NSR provisions, including, but not limited to, the modifications identified in

paragraph 42.  Such major modifications have resulted in significant net emission increases of

$NO_x$ and/or $SO_2$.  As a result, these modifications triggered the requirements to, among other

things, obtain a PSD permit and/or nonattainment NSR permit establishing emission limitations

that meet BACT and/or LAER and to operate in compliance with BACT and/or LAER.  Each of

the Defendants has failed to comply with these requirements.

49.     Each of the Defendants failed to submit a complete application for a Title V

operating permit, or to supplement or correct such application and provide additional information

to address requirements applicable after the filing of the application, for one or more of its

Facilities that underwent a major modification.  In particular, each Defendant failed to submit a

Title V permit application that:  identified all applicable requirements (including the PSD and/or

nonattainment NSR requirements and the requirement to meet BACT pursuant to PSD and/or

LAER pursuant to nonattainment NSR); certified compliance by a responsible official with all

14

applicable requirements; and contained a compliance plan for all applicable requirements for which the source was not in compliance, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5 and the applicable state Title V regulations.

50.    Each Defendant has failed to obtain a proper or adequate Title V operating permit for one or more of its plants subject to PSD and/or nonattainment NSR that contained emission limitations for $NO_x$ and/or $SO_2$ that met BACT and/or LAER as required by Section 504(a) of the Act, 42 U.S.C. § 7661c(a), and 40 C.F.R. §§ 70.1(b), 70.6(a), and the applicable state Title V regulations.  As a result, each Defendant has operated one or more of its plants without meeting such limitations and without having an operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the plant is not in compliance.  Each Defendant's conduct has violated and continues to violate Sections 502(a), 503 and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b and 7661c(a), and the related federal operating permit program regulations at 40 C.F.R. Part 70 and the applicable state Title V regulations.  Unless restrained by an order of this Court, these violations will continue.

51.    As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act (for PSD violations), 42 U.S.C. § 7477, and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject each Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1.    Order the Defendants to immediately comply with the state and federal statutory and regulatory requirements cited in this Complaint, under the Clean Air Act;

2.    Order the Defendants to remedy their past violations by, among other things, requiring Defendants to employ BACT under PSD or LAER under nonattainment NSR, as appropriate, at the plants at which violations of the Act have occurred for each pollutant subject to regulation under the Act;

3.    Order Defendants to apply for and comply with permits for their respective cement plants that conform to the requirements of the PSD and/or nonattainment NSR provisions of the Act and the applicable SIP, as appropriate, and with Title V of the Act;

4.    Order Defendants to take other appropriate actions to address or offset the unlawful emissions of $SO_2$ and $NO_x$ attributable to the violations of the Clean Air Act alleged above;

5.    Assess civil penalties against Defendants for up to the amounts provided by applicable law;

6.    Award Plaintiff its cost of this action; and,

16

7.    Grant the United States such other relief as this Court deems just and proper.

Respectfully submitted,

*Ignacia S. Moreno*

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice

*Pamela R. Lee*

PAMELA R. LEE
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 305-2775 (Tel.)
(202) 616-6584 (Fax)
pamela.r.lee@usdoj.gov

*Andrew C. Hanson*

ANDREW C. HANSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-9859 (Tel.)
(202) 616-6584 (Fax)
andrew.hanson2@usdoj.gov

A. COURTNEY COX
United States Attorney

J. CHRISTOPHER MOORE
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
(618) 628-3700 (Tel.)
(618) 628-3730 (Fax)
Chris.Moore@usdoj.gov

18