UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>and the STATE of ALABAMA, the STATE of ILLINOIS, the STATE of IOWA, the STATE of KANSAS, the STATE of MICHIGAN, the STATE of MISSOURI, the STATE of NEW YORK, the STATE of OHIO, the COMMONWEALTH of PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, the STATE of SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, the WASHINGTON STATE DEPARTMENT OF ECOLOGY, the OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY, and the PUGET SOUND CLEAN AIR AGENCY,<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>LAFARGE NORTH AMERICA, INC., LAFARGE MIDWEST, INC., LAFARGE BUILDING MATERIALS, INC., ARGOS USA CORP., and ARGOS CEMENT LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3:10-CV-44<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDMENT TO CONSENT DECREE

WHEREAS, the United States of America (hereinafter "the United States"), on behalf of

the United States Environmental Protection Agency (herein "U.S. EPA"); the State of Alabama,

the State of Illinois, the State of Iowa, the State of Kansas, the State of Michigan, the State of

Missouri, the State of New York, the State of Ohio, the Commonwealth of Pennsylvania

1

Department of Environmental Protection, the South Carolina Department of Health and Environmental Control, the Washington State Department of Ecology, the Oklahoma Department of Environmental Quality, and the Puget Sound Clean Air Agency (collectively, "State Plaintiffs"), Defendants Lafarge North America Inc., ("Lafarge") and its wholly owned subsidiaries Lafarge Midwest, Inc. and Lafarge Building Materials Inc. (collectively "the Lafarge Companies") are parties to a Consent Decree entered by this Court on March 18, 2010 and amended by this Court on April 28, 2011 (collectively "Consent Decree" or "Decree");

WHEREAS, the Lafarge Companies have transferred ownership and operation to Argos Cement LLC, a Delaware limited liability company, three facilities covered by the Consent Decree, to wit; the Harleyville Cement Plant located at Harleyville, South Carolina, the Roberta Cement Plant located at Calera, Alabama, and the Atlanta Cement Plant located at Atlanta, Georgia;

WHEREAS, the Lafarge Companies on October 3, 2011 (hereinafter, the "Closing Date") conveyed to Argos USA Corp., a Delaware corporation, the outstanding equity interest of Argos Cement LLC;

WHEREAS, the Parties have jointly stipulated in this Second Amendment to the Consent Decree that the obligations in Paragraph 90 of the Decree, applicable to the Atlanta Cement Plant, have been satisfied by the Lafarge Companies, that Atlanta Kiln 1 has been permanently shutdown, and that the Decree may be terminated with respect to the Atlanta Cement Plant;

WHEREAS, for purposes of this proposed Second Amendment to the Consent Decree, the South Carolina Department of Health and Environmental Control and the State of Alabama are Affected States within the meaning of Paragraph 7.c of the Consent Decree;

2

WHEREAS, as allowed by Paragraph 4 of the original Consent Decree in this case, Argos USA Corp. and Argos Cement LLC (collectively, the "Argos Companies") have agreed in writing to assume the obligations, rights, and benefits of, and to be bound by the terms and conditions of, the Consent Decree, to the extent such obligations, terms, and conditions relate to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant subsequent to the Closing Date;

WHEREAS, the Argos Companies have represented that they have the financial and technical ability to assume the obligations and liabilities of the Consent Decree, to the extent that such obligations and liabilities of the Consent Decree relate to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant, consistent with Paragraph 4 of the original Consent Decree;

WHEREAS, the United States, the South Carolina Department of Health and Environmental Control, and the State of Alabama each agree to relieve the Lafarge Companies of their duties and obligations under the Consent Decree with respect to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant;

WHEREAS, each of the undersigned has reviewed and hereby consents to this Second Amendment to the Consent Decree;

WHEREAS, Paragraph 158 of the Consent Decree requires that this amendment be approved by the Court before it is effective;

NOW THEREFORE, the United States, the South Carolina Department of Health and Environmental Control, the State of Alabama, the Lafarge Companies, and the Argos Companies agree that, upon approval of this Second Amendment to the Consent Decree by the Court, the Consent Decree shall thereby be amended as follows:

1.      As provided below, as of the Closing Date on October 3, 2011, which is the date and time of completion of the transfer of ownership and operation of the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant from the Lafarge Companies to the Argos Companies, the Argos Companies assume the obligations and liabilities, and secure the rights and benefits, of the Consent Decree to the extent such obligations, liabilities, rights and benefits of the Consent Decree relate to the Harleyville Cement Plant and the Roberta Cement Plant, and the Atlanta Cement Plant subsequent to the Closing Date.

2.      Except as provided below, upon entry by the Court of this Second Amendment to the Consent Decree, the Lafarge Companies are released from their obligations and liabilities with respect to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant but retain all rights and benefits under the Consent Decree, as such obligations and liabilities relate to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant subsequent to the Closing Date.

3.      Nothing in this Second Amendment to the Consent Decree affects the provisions of the Consent Decree that do not relate to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant.  In no event shall the Argos Companies bear any liability under the Consent Decree, including without limitation relating to any obligations, requirements and penalties, related to or associated with the Alpena Cement Plant, the Ravena Cement Plant, the Tulsa Cement Plant, the Fredonia Cement Plant, the Sugar Creek Cement Plant, the Davenport Cement Plant, the Paulding Cement Plant, the Joppa Cement Plant, the Seattle Cement Plant, and the Whitehall Cement Plant.

4.      The Argos Companies shall not be responsible in any respect for any portion of the Civil Penalty provided in Section IV of the Consent Decree, which the United States, the

South Carolina Department of Health and Environmental Control, and State of Alabama acknowledge has been paid in full.  In addition, the Parties acknowledge that the Argos Companies' obligations with respect to the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant did not commence before the Closing Date.  The Argos Companies shall have no liability for any obligations, requirements or actions under the Consent Decree required to be performed prior to the Closing Date, nor for that portion of any continuing violation covered by Paragraph 145 of the Consent Decree, as amended, at the Harleyville Cement Plant, the Roberta Cement Plant, and the Atlanta Cement Plant that occurs before the Closing Date.

A.  **Section I:  Jurisdiction and Venue**

5.      Reference to "the Lafarge Companies" in Paragraph 2 of the Consent Decree shall be revised to refer to "the Lafarge Companies and the Argos Companies."

B.  **Section II:  Applicability**

6.      References to "the Lafarge Companies" in Paragraph 3 of the Consent Decree shall be amended to refer to "the Lafarge Companies and the Argos Companies, as applicable."

7.      Paragraph 4 shall be amended as follows:  "At least 30 Days prior to any transfer of ownership or operation of any Facility identified in Paragraph 7.w. (except for the Atlanta Cement Plant) the Defendant initiating the proposed transfer of ownership or operation shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to U.S. EPA, the United States, and the Affected State(s) in accordance with Section XIX (Notices) of this Consent Decree.  No transfer of ownership or operation of a Facility identified in Paragraph 7.w., whether in compliance with the procedures of this Paragraph or

5

otherwise, shall relieve the Defendant of its obligation to ensure that the terms of the Decree are implemented, unless:

    a.   the transferee agrees, in writing, to undertake the obligations required by Sections V ($NO_x$ Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements), VI ($SO_2$ Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements), VII (Temporary Cessation of Kiln Operation), VIII (Election to Retire and Replace Kilns), IX (Prohibition on Netting Credits or Offsets From Required Controls), Section X (Permits), Section XI (Review and Approval of Submittals), Section XII (Reporting Requirements), Section XIII (Stipulated Penalties), Section XIV (Force Majeure),  Section XV (Dispute Resolution), and XVI (Information Collection and Retention) of this Decree applicable to such Facility and further agrees in writing to be substituted for the Defendant(s) as a Party under the Decree with respect to such Facility and thus become bound by the terms thereof;

    b.   the United States and the Affected State(s) determine that the transferee has the financial and technical ability to assume the Consent Decree's obligations applicable to such Facility;

    c.   the United States and the Affected State(s) consent, in writing, to relieve the Defendant of its Consent Decree obligations applicable to such Facility, and

    d.   the transferee becomes a party to this Consent Decree with respect to the transferred Facility, pursuant to Section XXII (Modification).

Any attempt to transfer ownership or operation of any of the Facilities identified in Paragraph 7.w., or any portion thereof, without complying with this Paragraph constitutes a violation of this Decree."

8.      Paragraph 5 shall be amended as follows: "Each Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any Contractor retained to provide services required to comply with the provisions of this Consent Decree. Each Defendant shall condition any such contract upon performance of the services in conformity with the provisions of this Consent Decree."

9.      Paragraph 6 shall be amended as follows: "In any action to enforce this Consent Decree, no Defendant shall raise as a defense the failure by any of its officers, directors, employees, agents, or Contractors to take any actions necessary to comply with the provisions of this Consent Decree."

**C.  Section III:  Definitions**

10.     References to "the Lafarge Companies" in Paragraph 7.a., 7.k, 7.vv, of the Consent Decree shall be amended to refer to "the Lafarge Companies or, as applicable, the Argos Companies".

11.     Paragraph 7.p. shall amended as follows:  "'Defendants' shall mean the Lafarge Companies and the Argos Companies;"

12.     Paragraph 7.bb shall be amended to read as follows:  "'Lafarge Companies' or 'Lafarge' shall mean Lafarge North America, Inc., Lafarge Midwest, Inc., Lafarge Building Materials, Inc. or any of the foregoing;"

13.     Paragraph 7.kk of the Consent Decree shall be amended as follows: "'Parties' shall mean the United States, the State of Alabama, the State of Illinois, the State of Iowa, the State of Kansas, the State of Michigan, the State of Missouri, the State of New York, the State of Ohio, the Commonwealth of Pennsylvania Department of Environmental Protection, Washington State Department of Ecology, the South Carolina Department of Health and Environmental Control, the Oklahoma Department of Environmental Quality, the Puget Sound Clean Air Agency, the Lafarge Companies, and the Argos Companies;"

## D. Section V:  NO$_X$ Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements

14.     Paragraph 11 shall be amended to read as follows:  "Subject to Section VII (Temporary Cessation of Kiln Operation), the Lafarge Companies and, as applicable, the Argos Companies shall install the NO$_X$ Control Technology and comply with the Emission Limits and Tonnage Limits for the specific Facilities and Kilns within their systems according to Paragraphs 11 through 44.  The Lafarge Companies shall Continuously Operate each NO$_X$ Control Technology as applicable to each Kiln at all times of Kiln Operation, except for periods of Malfunction of the NO$_X$ Control Technology.  Compliance with any requirement of this Section V (NO$_X$ Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements) relating to any specific Facility or Kiln shall not be required if the Lafarge Companies or, as applicable, the Argos Companies retire any such Facility or Kiln prior to any date for compliance.   If one or more Kilns at a Facility is in Temporary Cessation, then the following provisions shall apply in addition to any other requirements in this Consent Decree:

      a.  The Lafarge Companies shall comply with the applicable Demonstration Phase Facility-Wide 12-Month Rolling Average Emission Limit at all other Kilns not in Temporary Cessation at the Facility within 12 months of the Day

8

on which the last Optimization Phase was concluded (as determined by U.S. EPA and the Affected State) at a Kiln not in Temporary Cessation at the Facility; and

b. The Lafarge Companies shall comply with the applicable Facility-Wide 12-Month Rolling Average Emission Limit and Facility-Wide 12-Month Rolling Tonnage Limit at all other Kilns not in Temporary Cessation on the dates required in this Section V ($NO_x$ Control Technology, Emission Limits, Tonnage Limits and Monitoring Requirements)."

15.     Paragraph 43 shall be amended as follows: "Upon and after the Effective Date of this Consent Decree, the Argos Companies shall achieve and maintain compliance with a 30-Day Rolling Average Emission Limit for $NO_x$ of 2.4 lbs/Ton of clinker at Roberta Kiln 5."

16.     Paragraph 44 shall be amended as follows:  "The Argos Companies shall comply with such requirements of Permit Number 0900-0004-ER-R2, issued by the South Carolina Department of Health and Environmental Control on December 14, 2007, applicable to $NO_x$ emissions at Harleyville Kiln 1 at the Harleyville Facility."

17.     References to "the Lafarge Companies" in Paragraphs 45 and 48 of the Consent Decree shall be amended to refer to "the Lafarge Companies and, as applicable to Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies".

### E.  Section VI:  $SO_2$ Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements

18.     Paragraph 49 shall be amended as follows: "Subject to Section VII (Temporary Cessation of Kiln Operation), the Lafarge Companies and, as applicable, the Argos Companies shall install the $SO_2$ Control Technology and comply with the Emission Limits for the specific Facilities and Kilns within their system according to Paragraphs 49 through 77.  The Lafarge

9

Companies shall Continuously Operate each $SO_2$ Control Technology as applicable to each Kiln at all times of Kiln Operation, except for periods of Malfunction of the $SO_2$ Control Technology. Compliance with any requirements of this Section VI relating to any specific Facility or Kiln shall not be required if the Lafarge Companies or, as applicable, the Argos Companies retire any such Facility or Kiln prior to any date for compliance. If one or more Kilns at a Facility is in Temporary Cessation, then the following provisions shall apply in addition to any other requirements in this Consent Decree:

      a.   The Lafarge Companies shall comply with the applicable Demonstration Phase Facility-Wide 12-Month Rolling Average Emission Limit at all other Kilns not in Temporary Cessation at the Facility within 12 months of the date on which the last Optimization Phase was concluded (as determined by U.S. EPA and the Affected State) at a Kiln not in Temporary Cessation at the Facility.

      b.   The Lafarge Companies shall comply with the applicable Facility-Wide 12-Month Rolling Average Emission Limit and Facility-Wide 12-Month Rolling Tonnage Limit at all other Kilns not in Temporary Cessation on the dates required in this Section VI ($SO_2$ Control Technology, Emission Limits, Tonnage Limits and Monitoring Requirements)."

19.     Paragraph 74 of the Consent Decree shall be amended as follows: "Upon and after the Effective Date, the Argos Companies shall achieve and maintain compliance with a 30-Day Rolling Average Emission Limit for $SO_2$ of 2.2 lbs/Ton of clinker at the Roberta Kiln 5."

20.     Paragraph 77 of the Consent Decree shall be amended as follows: "The Argos Companies shall comply with such requirements of Permit Number 0900-0004-EF-R2, issued by

the South Carolina Department of Health and Environmental Control on December 14, 2007, as applicable relative to $SO_2$ emissions at Harleyville Kiln 1 at the Harleyville Facility."

21.     References to "the Lafarge Companies" in Paragraphs 78 and 81 of the Consent Decree shall be amended to refer to "the Lafarge Companies and, as applicable to Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies".

### F.   Section IX:  Prohibition on Netting Credits or Offsets from Required Controls

22.     References to "the Lafarge Companies" in Paragraph 88 of the Consent Decree shall be amended to refer to "the Lafarge Companies and, as applicable to Harleyville Kiln 1 or Roberta Kiln 5, the Argos Companies".

23.     By this proposed Second Amendment to the Consent Decree, the United States and the Lafarge Companies stipulate, in accordance with the terms of Paragraph 160, as amended below, that the Lafarge Companies have reported in their semi-annual progress report that they have complied with the obligations set forth in Paragraph 90 of the Consent Decree with respect to the Atlanta Facility  The parties further stipulate that Atlanta Kiln 1 has been permanently shut down and will not be operated by the Argos Companies unless and until it has complied with all requirements under:  (1) the PSD provisions of the Clean Air Act, 42 U.S.C. §§ 7470-7492 and/or nonattainment NSR provisions of the Act, 42 U.S.C. §§ 7501-7515; and (2) the applicable federally-approved and enforceable State Implementation Plan provisions that incorporate and/or implement the federal PSD and/or nonattainment NSR requirements.  Upon the Court's review of the joint stipulation in this Paragraph 23 and upon entry of this Second Amendment to the Consent Decree by the Court, pursuant to Paragraph 160 of the Consent Decree, as amended below, this Consent Decree is hereby terminated as to the Atlanta Facility.

### G. Section X: Permits

24.     References to "Lafarge" or "the Lafarge Companies" in Paragraphs 91, 96 through 99 of the Consent Decree shall be amended to refer to "the Lafarge Companies and, as applicable to Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies".

25.     Paragraph 93 shall be amended as follows: "Upon issuance of a permit by the Affected State, or in conjunction with the issuance of such permit, the Lafarge Companies and, as applicable, the Argos Companies shall file any applications necessary to incorporate the requirements of the permit into the Title V operating permit for the relevant Facility. Neither the Lafarge Companies nor, as applicable, the Argos Companies, shall challenge the inclusion in any such permit of the Emission Limits and Tonnage Limits expressly prescribed in this Consent Decree (including, where applicable, 30-Day Rolling Average Emission Limits determined in accordance with the Appendix), but nothing in this Consent Decree is intended nor shall it be construed to require the establishment of Emission Limits or Tonnage Limits other than those Emission Limits and Tonnage Limits expressly prescribed in this Consent Decree nor to preclude the Lafarge Companies or, as applicable, the Argos Companies, from challenging any more stringent Emission Limits or Tonnage Limits should they be proposed for reasons independent of this Consent Decree."

26.     Paragraph 95 shall be amended as follows: "The Parties agree that the incorporation of any Emission Limits and any other requirements and limitations into the Title V permits for the Lafarge Companies' and the Argos' Companies' Facilities shall be in accordance with the applicable federal, State or local rules or laws.

#### H. **Section XI: Review and Approval of Submittals**

27.     Paragraph 102 shall be amended as follows:  "If the submission is approved pursuant to Paragraph 101, the Lafarge Companies, and, as applicable, the Argos Companies shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 101(b) or (c), the Lafarge Companies or, as applicable, the Argos Companies shall, upon written direction of U.S. EPA, after consultation with the Affected State, take all actions required by the approved plan, report, or other item that U.S. EPA, after consultation with the Affected State, determines are technically severable from any disapproved portions, submit to the Lafarge Companies' or, as applicable, the Argos' Companies' right to dispute only the specified conditions or the disapproved portions, under Section XV of this Decree (Dispute Resolution).

28.     References to "Lafarge" or "the Lafarge Companies" in Paragraph 103 of the Consent Decree shall be amended to refer to "the Lafarge Companies or, as applicable to Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies".

29.     Paragraph 104 shall be amended as follows:  "Any stipulated penalties applicable to an original submission that is disapproved in whole or in part pursuant to Section 101(c) or (d), as provided in Section XIII (Stipulated Penalties) of this Consent Decree, shall continue to accrue during the period specified in Paragraph 114, but any stipulated penalties that accrue following the receipt of the submission shall not be payable unless the resubmission is untimely or disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the Lafarge Companies' or, as applicable, the Argo Companies'

obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent submission.

30.     Paragraph 105 shall be amended as follows: "If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, U.S. EPA and the Affected State may again require the Lafarge Companies or, as applicable, the Argos Companies to correct any deficiencies in accordance with the preceding Paragraphs, or may themselves correct any deficiencies and seek stipulated penalties, subject to the applicable Defendant's right to invoke Dispute Resolution under Section XV of this Consent Decree."

### I.  Section XII:  Reporting Requirements

31.     References to "the Lafarge Companies" in Paragraph 106 of the Consent Decree shall be amended to refer to "the Lafarge Companies and, as applicable to Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies".

32.     Paragraph 107 shall be amended as follows: "If the Lafarge Companies or the Argos Companies violate, or have reason to believe that they may violate, any requirement of this Consent Decree, the Lafarge Companies or, as applicable, the Argos Companies shall notify the United States and the Affected State of such violation and its likely duration, in writing, within ten Business Days of the Day the Lafarge Companies or, as applicable, the Argos Companies first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  The Lafarge Companies or, as applicable, the Argos Companies shall investigate the cause of the violation and shall then submit an amendment to the report required under Paragraph 106, including a full explanation of the cause of the violation, within 30 Days of the Day the Lafarge Companies or, as applicable, the Argos Companies become aware of the cause of the violation.

Nothing in this Paragraph or the following Paragraph relieves the Lafarge Companies or the Argos Companies of their individual obligation to provide the notice required by Section XIV of this Consent Decree (Force Majeure) if the Lafarge Companies or the Argos Companies contend a Force Majeure event occurred."

33.    Paragraph 108 shall be amended as follows: "Whenever any violation of this Consent Decree, or of any applicable permits required under this Consent Decree, or any other event affecting the Lafarge Companies' or the Argos Companies' performance under this Decree, or the performance of any Facility, may pose an immediate threat to the public health or welfare or the environment, the Lafarge Companies or, as applicable, the Argos Companies shall notify U.S. EPA and the Affected State, orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after the Lafarge Companies or the Argos Companies first knew, or should have known, of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph."

34.    Paragraph 110 shall be amended as follows: "Each report submitted by the Lafarge Companies and the Argos Companies under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical."

35.     Paragraph 111 shall be amended as follows: "The reporting requirements of this

Consent Decree do not relieve the Lafarge Companies or the Argos Companies of any reporting

obligations required by the Clean Air Act or implementing regulations, or by any other federal,

State, or local law, regulation, permit, or other requirement."

**J.   Section XIII:  Stipulated Penalties**

36.     References to "the Lafarge Companies" in Paragraphs 113 through  115 and

Paragraphs 117 and 118 of the Consent Decree shall be amended to refer to "the Lafarge

Companies or, as applicable, the Argos Companies".

37.     Paragraph 119 shall be amended as follows:  "Defendants shall not deduct

stipulated penalties paid under this Section in calculating their federal income tax."

38.     References to "the Lafarge Companies" in Paragraphs 120 and 121 of the Consent

Decree shall be amended to refer to "the Lafarge Companies or, as applicable, the Argos

Companies".  In addition, references to "the Lafarge Companies'" in Paragraphs 120 and 121  of

the Consent Decree shall be amended to refer to "the Lafarge Companies' or, as applicable to

Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies'".

**K.   Section XIV:  Force Majeure**

39.     Paragraph 122 shall be amended as follows: "'Force Majeure' (for purposes of

this Consent Decree) is defined as any event arising from causes beyond the control of the

Lafarge Companies or, as applicable, the Argos Companies, or the applicable Defendant's

Contractors, that causes a delay or impediment to performance in complying with any obligation

under this Consent Decree despite the applicable Defendant's best efforts to fulfill the obligation.

The requirement that the Lafarge Companies or, as applicable, the Argos Companies exercise

best efforts to fulfill the obligation includes using best efforts to anticipate any potential Force

Majeure even and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. Force Majeure does not include the Lafarge Companies' and the Argos Companies' financial inability to perform any obligation under this Consent Decree.

40.    Paragraph 123 shall be amended as follows: "If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, and which Lafarge Companies or, as applicable, the Argos Companies contend qualifies as an event of Force Majeure, the applicable Defendant shall provide notice orally or by electronic or facsimile transmission to the representatives of U.S. EPA and the Affected State(s) designated to receive notice pursuant to Section XIX (Notices) as soon as practicable but no later than seven (7) Business Days following the date the applicable Defendant first knew, or in the exercise of due diligence should have known, that the claimed Force Majeure event might cause a delay and give rise to a claim of Force Majeure. The Lafarge Companies or, as applicable, the Argos Companies shall provide written notice of the event as soon as practicable, but in no event later than 21 Business Days following the date when the applicable Defendant first knew that the event might cause a delay. The written notice shall explain and describe the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and the applicable Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim. The Lafarge Companies or, as applicable, the Argos Companies shall include with any written notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. The applicable Defendant shall be deemed to know of any circumstance of which the applicable

17

Defendant, any entity controlled by the applicable Defendant, or the applicable Defendant's Contractors knew or should have known.

41.     Paragraph 124 shall be amended to read as follows: "Failure by the Lafarge Companies or, as applicable, the Argos Companies to comply with the notice requirements of Paragraph 123 may render this Section voidable by U.S. EPA, after an opportunity for consultations with the Affected State, as to the specific event for which the Lafarge Companies or the Argos Companies have failed to comply with such notice requirement. If so voided, it shall be of no effect as to the particular event involved."

42.     References to "the Lafarge Companies" in Paragraphs 125, and 126 of the Consent Decree shall be amended to refer to "the Lafarge Companies or, as applicable to Harleyville Kiln 1 and Roberta Kiln 5, the Argos Companies".

43.     Paragraph 127 shall be amended as follows: "If the Lafarge Companies or the Argos Companies elect to invoke the formal dispute resolution procedures set forth in Section XV (Dispute Resolution), they shall do so no later than 45 Days after receipt of U.S. EPA's and the Affected State's notice pursuant to Paragraph 125 or Paragraph 126, whichever applies, and shall first comply with the provisions for Informal Dispute Resolution contained in Section XV before proceeding to Formal Dispute Resolution. In any such proceeding in accordance with Formal Dispute Resolution Procedures, the Lafarge Companies or, as applicable, the Argos Companies shall have the burden of demonstrating that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Lafarge Companies or, as applicable, the Argos Companies complied with the requirements of Paragraph 123, above. If the Lafarge Companies

or, as applicable, the Argos Companies carry this burden, the delay at issue shall be deemed not to be a violation by the Lafarge Companies or, as applicable, the Argos Companies of the affected obligation of this Consent Decree identified to U.S. EPA and the Court."

44.    Paragraph 128 shall be amended as follows: "This Court shall not draw any inferences nor establish any presumptions adverse to any Party as a result of the Lafarge Companies' or the Argos Companies' delivering a notice of Force Majeure or the Parties' inability to reach agreement."

## L.  <u>Section XV:  Dispute Resolution</u>

45.    Paragraph 129 shall be amended as follows:  "Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The Lafarge Companies' or the Argos Companies' failure to seek resolution of a dispute under this Section shall preclude the Lafarge Companies or, as applicable, the Argos Companies from raising any such issue as a defense to an action by the United States or the Affected State(s) to enforce any obligation of the Lafarge Companies or the Argos Companies arising under this Decree."

46.    Paragraph 130 shall be amended as follows: "<u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when the Lafarge Companies or, if the dispute relates to the Harleyville Facility or the Robert Facility, the Argos Companies send the United States and the Affected State(s) a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by

written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and the Affected State(s) shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, the Defendant(s) invoke(s) formal dispute resolution procedures as set forth below."

47. Paragraph 131 shall be amended as follows: "Formal Dispute Resolution. The Lafarge Companies or, if the dispute relates to the Harleyville Facility or the Roberta Facility, the Argos Companies shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and Affected State(s) a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting the Lafarge Companies' or, as applicable, the Argos Companies' position and any supporting documentation relied upon by the Defendant."

48. Paragraph 132 shall be amended as follows: "The United States and the Affected State(s) shall serve their Statement of Position within 45 Days of receipt of the Defendant's Statement of Position. The United States' and the Affected State(s)' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States and the Affected State(s). The Statement of Position of the United States and Affected State(s) shall be binding on the Defendant invoking dispute resolution under this Section XV, unless the Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph."

49. Paragraph 133 shall be amended as follows: "The Defendant invoking dispute resolution under this Section XV may seek judicial review of the dispute by filing with the Court

and serving on the United States and the Affected State(s), in accordance with Section XIX of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion shall contain a written statement of the Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree."

50.     Paragraph 134 shall be amended as follows: "The United States and the Affected State(s) shall respond to the Lafarge Companies' or, as applicable, the Argos Companies' motion within the time period allowed by the Local Rules of this Court. The Defendant invoking dispute resolution under this Section XV may file a reply memorandum, to the extent permitted by the Local Rules."

51.     Paragraph 135 shall be amended as follows: <u>"Standard of Review.</u> Except as otherwise provided in this Consent Decree, the Court shall decide all disputes pursuant to applicable principles of law. The disputing Parties shall state their respective positions as to the applicable standard of law for resolving the particular dispute in the Parties' initial filings with the Court under Paragraphs 133 and 134. Except as otherwise provided in this Consent Decree, in any dispute brought under this Section XV (Dispute Resolution), the Defendant invoking dispute resolution shall bear the burden of demonstrating that its position complies with this Consent Decree."

52.     Paragraph 136 shall be amended as follows: "The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Lafarge Companies or, as applicable to the Harleyville Facility and the Roberta Facility, the Argos Companies under this Consent Decree, unless and until final

resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute and in accordance with any extension or modification of the schedule for completion of work as provided in Paragraph 125.  If the Defendant invoking dispute resolution procedures under this Section XV does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIII (Stipulated Penalties)."

### M. Section XVI:  Information Collection and Retention

53.     Paragraph 139 shall be amended as follows:

"e.     assess each Defendant's compliance with this Consent Decree."

54.     References to "the Lafarge Companies" in Paragraphs 140 through 144 of the Consent Decree shall be amended to refer to "the Lafarge Companies and, as applicable to the Harleyville Facility and the Roberta Facility, the Argos Companies".  References to "the Lafarge Companies'" in Paragraph 140 of the Consent Decree shall be amended to refer to "the Lafarge Companies' and, as applicable to the Harleyville Facility and the Roberta Facility, the Argos Companies'".

### N. Section XVII:  Effect of Settlement/Reservation of Rights

55.     Paragraph 145 shall be amended as follows: "Liability Resolution.  With respect to the emissions of $NO_x$ and $SO_2$ from the Kilns identified in Paragraph 7.z (except for Joppa Kiln 3), entry of this Consent Decree shall resolve all civil liability of the Lafarge Companies or, as the owner and successor in interest with respect to Harleyville Kiln 1, Roberta Kiln 5, and Atlanta Kiln 1, the Argos Companies, to the United States and the Affected States for violations of the following requirements resulting from or arising out of a construction or modification that commenced prior to the Date of Lodging of the Consent Decree:

22

a.   The PSD requirements at Part C of Subchapter I of the Act, 42 U.S.C. § 7475, and the regulations promulgated thereunder at 40 C.F.R. §§ 52.21 and 51.166; "Plan Requirements for Non-attainment Areas" at Part D of Subchapter I of the Act, 42 U.S.C. §7503 and the regulations promulgated thereunder at 40 C.F.R. §§ 51.165(a) and (b), 40 C.F.R. Part 51 (Appendix S), and 40 C.F.R. § 52.24; any applicable federally-enforceable State, regional, or local regulations that implement, adopt, or incorporate the specific federal regulatory requirements identified above; and, any applicable State, regional, or local regulations that implement, adopt, or incorporate the specific federal regulatory requirements identified above.

b.   Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f; any applicable federally-enforceable State, regional, or local regulations that implement, adopt, or incorporate the specific federal regulatory requirements of Title V; and, any applicable State, regional, or local regulations that implement, adopt, or incorporate the specific federal regulatory requirements of Title V, but only to the extent that such claims are based on the Lafarge Companies' failure to obtain an operating permit that reflects applicable requirements imposed under Parts C or D of Subchapter I of the Clean Air Act as a result of construction or modification of the Kilns identified in Paragraph 7.z. (except for Joppa Kiln 3) that commenced prior to the Date of Lodging."

56.   Paragraph 146 shall be amended as follows: "Notwithstanding the resolution of liability in Paragraph 145 nothing in this Consent Decree precludes the United States and/or the Affected States from seeking from the Lafarge Companies or, as the owner and successor in

23

interest with respect to Harleyville Kiln 1, Roberta Kiln 5, and Atlanta Kiln 1, the Argos Companies, injunctive relief, penalties, or other appropriate relief for violations by the Lafarge Companies or the Argos Companies of the regulatory requirements identified in Paragraph 145 resulting from (1) construction or modification that commenced prior to the Date of Lodging of the Consent Decree, if the resulting violations do not relate to the Kilns (other than Joppa Kiln 3) or do not relate to $NO_x$ or $SO_2$; or (2) any construction or modification that commences after the Date of Lodging of the Consent Decree."

57.     Paragraph 147 shall be amended as follows:  "The United States and the Affected States reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or the Affected States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or State laws, regulations, or permit conditions, except as expressly specified in Paragraph 145.  The United States and the Affected States further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, one or more of the Lafarge Companies' Facilities or the Argos Companies' Facilities, whether related to the violations addressed in this Consent Decree or otherwise."

58.     Paragraph 148 shall be amended as follows:  "In any subsequent administrative or judicial proceeding initiated by the United States or the Affected States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or the Lafarge Companies' violations or the Argos Companies' violations, neither the Lafarge Companies nor the Argos Companies shall assert or maintain any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based

24

upon any contention that the claims raised by the United States or an Affected State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 145 of this Section."

59.     Paragraph 149 shall be amended as follows: "This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. The Lafarge Companies and the Argos Companies are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the Lafarge Companies' and the Argos Companies' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the Affected States do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that the Lafarge Companies' or the Argos Companies' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. U.S.C. § 7401 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits."

60.     Paragraph 150 shall be amended as follows: "This Consent Decree does not limit or affect the rights of the Lafarge Companies, the Argos Companies, or of the United States or the Affected States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the Lafarge Companies or the Argos Companies, except as otherwise provided by law."

O. **Section XVIII: Costs**

61.     Paragraph 152 shall be amended as follows: "The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and any Affected State shall be entitled to collect the costs (including attorneys' fees) incurred in any action

25

necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Lafarge Companies or the Argos Companies".

P.  **Section XIX:  Notices**

62.     Paragraph 153 shall be amended as follows:  "Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

> To U.S. EPA:
>
> Phillip Brooks
> U.S. Environmental Protection Agency
> MC 2242A
> 1200 Pennsylvania Ave. NW
> Washington, D.C. 20460
>
> And
>
> > For all submissions referring to the Ravena Facility:
> > Dore Laposta
> > U.S. EPA Region II
> > 290 Broadway
> > New York, New York 10007-1866
> >
> > For all submissions referring to the Whitehall Facility:
> > Judy Katz
> > U.S. EPA Region III
> > 1650 Arch Street (3PM52)
> > Philadelphia, PA 19103-2029
> >
> > For all submissions referring to the Roberta and Harleyville Facilities:
> > Beverly Spagg
> > U.S. EPA Region IV
> > Sam Nunn Atlanta Federal Center
> > 61 Forsyth Street, SW
> > Atlanta, GA 30303-8960
> >
> > For all submissions referring to the Joppa, Paulding, and Alpena Facilities:
> > George Czerniak
> > U.S. EPA Region V
> > 77 W. Jackson Blvd.
> > Chicago, IL 60604

26

For all submissions referring to the Tulsa Facility:
David Garcia
U.S. EPA Region VI
1445 Ross Avenue
Suite 1200
Dallas, Texas 75202

For all submissions referring to the Davenport, Sugar Creek, and Fredonia
Facilities:
Rebecca Weber
U.S. EPA Region VII
901 N. 5th Street
Kansas City, KS 66101

For all submissions referring to the Seattle Facility:
John Keenan
U.S. EPA Region X
1200 Sixth Avenue Suite 900
Seattle, WA 98101

To the United States (in addition to the U.S. EPA addresses above):

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-2-1-08221

For all submissions referring to the Roberta Facility, to the State of Alabama:
Ronald W. Gore, Chief
Air Division
Alabama Department of Environmental Management
P.O. Box 301463
Montgomery, AL 36130-1464

For all submissions referring to the Ravena Facility, to the State of New York:
Gene Kelly, Regional Director
NYSDEC Region 4 Headquarters
1130 North Westcott Road
Schenectady, NY 12306-2014

For all submissions referring to the Whitehall Facility, to the Commonwealth of
Pennsylvania Department of Environmental Protection:
Mark Wejkszner

Air Quality Program Manager – Northeast Regional Office
Pennsylvania Department of Environmental Protection
2 Public Square
Wilkes-Barre, PA  18711-0790

For all submissions referring to the Paulding Facility, to the State of Ohio:
Tom Kalman, or his successor
Air Quality Engineer
Ohio Environmental Protection Agency
Division of Air Pollution Control
50 West Town Street, Suite 700
Columbus, Ohio 43215

Don Waltermeyer, or his successor
Environmental Supervisor
Ohio Environmental Protection Agency
Northwest District Office
347 North Dunbridge Road
Bowling Green, Ohio  43402

Robert Kenneth James, or his successor
Assistant Attorney General
Office of the Attorney General of Ohio
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215

For all submissions referring to the Alpena Facility, to the State of Michigan:
Thomas Hess
Enforcement Unit Chief
Michigan Department of Environmental Quality
Air Quality Division
P.O. Box 30260
Lansing, Michigan 48909-7760

For all submissions referring to the Harleyville Facility, to the South Carolina
Department of Health and Environmental Control:
Myra C. Reece, Chief
Bureau of Air Quality Control
South Carolina Department of Health and Environmental Control
2600 Bull Street
Columbia, SC 29201

For all submissions referring to the Joppa Facility, to the State of Illinois:
Raymond Pilapil, Section Manager
Compliance and Systems Management Section

Illinois Environmental Protection Agency
1021 North Grand Avenue
Springfield, Illinois 62702

For all submissions referring to the Davenport Facility, to the State of Iowa:
Brian Hutchins, Chief
Air Compliance and Monitoring Section
Iowa Department of Natural Resources
Air Quality Bureau
7900 Hickman Road, Suite 1
Urbandale, IA 50322

For all submissions referring to the Sugar Creek Facility, to the State of Missouri:
Steve Feeler, Chief
Compliance/Enforcement Section
Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, MO 65102

For all submissions referring to the Fredonia Facility, to the State of Kansas:
Victor Cooper, Chief
Air Compliance and Enforcement Section
Kansas Department of Health and Environment
1000 SW Jackson, Suite 310
Topeka, Kansas 66612-1366

For all submissions referring to the Tulsa Facility, to the Oklahoma Department of
Environmental Quality:
Mr. Eddie Terrill
Director
Air Quality Division
Oklahoma Department of Environmental Quality
P.O. Box 1677
Oklahoma City, OK 73101-1677

For all submissions referring to the Seattle Facility, to the Washington State
Department of Ecology:
Stuart Clark
Air Quality Manager
Washington State Department of Ecology
PO Box 47600
Olympia, WA 98504-7600

For all submissions referring to the Seattle Facility, to the Puget Sound Clean Air
Agency:
Jim Nolan

Puget Sound Clean Air Agency
1904 Third Avenue - Suite 105
Seattle, WA 98101

To the Lafarge Companies:

General Counsel, Peter L. Keeley (or Successor)
Lafarge North America Inc.
12018 Sunrise Valley Drive, Suite 500
Reston, Virginia 20191

Vice President of Environment and Government Affairs, Craig S. Campbell (or
Successor)
Lafarge North America Inc.  – Cement Division
12018 Sunrise Valley Drive, Suite 500
Reston, Virginia 20191

Steven C. Kohl, Esq.
Warner Norcross & Judd LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318

To the Argos Companies:

William Voshell Jr.
Argos Cement LLC
12735 Morris Road Ext., Suite 300
Alpharetta, GA 30004

Mark C. Prybylski
Argos USA Corp.
12735 Morris Road Ext., Suite 300
Alpharetta, GA 30004

## Q. **Section XII:  Modification**

63.      Paragraph 158 shall be amended as follows:  "The terms of this Consent Decree,

including the Appendix, may be modified only by a subsequent written agreement signed by any

Affected State(s), the United States, and the Lafarge Companies or, as applicable to the

Harleyville Facility the Roberta Facility, and the Atlanta Facility, the Argos Companies, except

as provided in Paragraph 159.  Where the modification constitutes a material change to this
Decree, it shall be effective only upon approval by the Court."

### R.  Section XXIII:  Termination

64.  Paragraph 160 shall be amended as follows:  "Termination as to an Individual
Facility.  After the Lafarge Companies or, as applicable to the Harleyville Facility and the
Roberta Facility, the Argos Companies have satisfied the requirements of Sections V ($NO_x$
Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements), VI ($SO_2$
Control Technology, Emission Limits, Tonnage Limits, and Monitoring Requirements), VII
(Temporary Cessation of Kiln Operation), VIII (Election to Retire and Replace Kilns), IX
(Prohibition on Netting Credits or Offsets from Required Controls) and X (Permits) of this
Decree and have maintained operation of any Control Technology as required by this Consent
Decree for a period of three years at an individual Facility, the Lafarge Companies or, as
applicable to the Harleyville Facility and the Roberta Facility, the Argos Companies may serve
upon the United States and the Affected State a Request for Termination, stating that the
Defendant invoking this Paragraph 160 has satisfied those requirements, together with all
necessary supporting documentation.  If the United States and the Affected State agree that the
Decree as it relates to an individual Facility may be terminated, then the United States, the
Affected State, as applicable, and the Defendant invoking this Paragraph 160 shall submit, for
the Court's approval, a joint stipulation terminating those provisions of the Decree."

65.  Paragraph 161 shall be amended as follows:  "Complete Termination.  After the
Lafarge Companies and, as applicable to the Harleyville Facility and the RobertaFacility, the
Argos Companies, have satisfied the  requirements of Sections V ($NO_x$ Control Technology,
Emission Limits, Tonnage Limits, and Monitoring Requirements), VI ($SO_2$ Control Technology,

Emission Limits, Tonnage Limits, and Monitoring Requirements), VII (Temporary Cessation of Kiln Operation), VIII (Election to Retire and Replace Kilns), IX (Prohibition on Netting Credits or Offsets from Required Controls) and X (Permits) of this Decree and have maintained operation of all Control Technology as required by this Consent Decree for a period of three years at all Facilities, have complied with all other requirements of this Consent Decree, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, the Defendants may jointly serve upon the United States and the Affected States a Request for Termination, stating that the Defendants have satisfied those requirements, together with all necessary supporting documentation. If the United States and the Affected States agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree."

66.    Paragraph 162 shall be amended as follows: "If the United States and the Affected State(s) do not agree that the Decree as a whole or as it relates to an individual Facility may be terminated, the Lafarge Companies or, as applicable, the Argos Companies may invoke Dispute Resolution under Section XV of this Decree. However, neither the Argos Companies nor the Lafarge Companies shall seek Dispute Resolution of any dispute regarding termination under Section XV of this Consent Decree until sixty (60) Days after service of its Request for Termination."

## S.  **Section XXIV:  Public Participation**

67.    This Second Amendment to the Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Second Amendment to the Consent Decree disclose facts or

considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Second Amendment to the Consent Decree without further notice and agree not to withdraw from or oppose entry of this Second Amendment to the Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Decree.

**T. Section XXV:  Signatories/Service**

68.     The Assistant Attorney General or Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and each undersigned representative of the Lafarge Companies and the Argos Companies and the State Plaintiffs certifies that he or she is fully authorized to enter into the terms and conditions of this Second Amendment to the Consent Decree and to execute and legally bind the Party he or she represents to this document.

69.     This Second Amendment to the Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to the Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Defendants shall each identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of each Defendant with respect to all matters arising under or relating to this Consent Decree, which includes the Amendment to Consent Decree and Second Amendment to the Consent Decree.

**U. Section XXVI:  Integration**

70.     Paragraph 166 shall be amended as follows: "This Consent Decree, together with the Amendment to Consent Decree and Second Amendment to Consent Decree, constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding or promise constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree."

71.     Neither the approval of the Argos Companies with respect to the Alpena Facility, the Ravena Facility, the Tulsa Facility, the Fredonia Facility, the Sugar Creek Facility, the Davenport Facility, the Paulding Facility, the Joppa Facility, the Seattle Facility, and the Whitehall Facility, nor the approval of the Lafarge Companies with respect to the Harleyville Facility and Roberta Facility, shall be required for any future amendments to this Consent Decree, including without limitation to address a sale of all or any portion of a Facility covered by this Consent Decree.

72.     This Second Amendment to the Consent Decree may be executed in several counterparts, each of which shall be considered an original.

**V.  Section XXVII:  Final Judgment**

73.     Paragraph 167 shall be amended as follows: "Upon approval and entry of this Consent Decree by the Court, the Consent Decree, together with the Amendment to Consent Decree and Second Amendment to Consent Decree, shall constitute a final judgment of the Court as to the United States, the State of Alabama, the State of Illinois, the State of Iowa, the State of Kansas, the State of Michigan, the State of Missouri, the State of New York, the State of Ohio, the Commonwealth of Pennsylvania Department of Environmental Protection South Carolina

34

Department of Health and Environmental Control, the Washington State Department of Ecology, the Oklahoma Department of Environmental Quality, the Puget Sound Clean Air Agency, the Lafarge Companies and the Argos Companies. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58."

**ORDER**

Before the taking of any testimony, without adjudication of any issue of fact or law, and upon the consent and agreement of the Parties, it is:

ORDERED, ADJUDGED and DECREED that this Second Amendment to Consent Decree is hereby approved and entered as a final order of this Court.

Dated and entered this ___4___ Day of ___October___ 2012.

_____
UNITED STATES DISTRICT COURT JUDGE
Southern District of Illinois

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 6/20/12

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
 Division
United States Department of Justice

Date: 5/30/12

ANDREW C. HANSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-9859 (Tel.)
(202) 616-6584 (Fax)
andrew.hanson2@usdoj.gov

36

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR PLAINTIFF UNITED STATES OF AMERICA:

STEPHEN R. WIGGINTON
United States Attorney

s/ J. Christopher Moore                          Date: _____6/1/2012_____
J. CHRISTOPHER MOORE
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
(618) 628-3700 (Tel.)
(618) 628-3730 (Fax)
Chris.Moore@usdoj.gov

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date:   2/29/12

PAMELA J. MAZAKAS
Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


Date:   2/28/12

PHILLIP A. BROOKS
Director, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

Signature Page for *United States of America* et al. *v. Lafarge North America, Inc.* et al.
Consent Decree

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date: 5/22/12

MARY J. WILKES
Regional Counsel and Director
Office of Environmental Accountability
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303


Date: April 30, 2012

ELLEN A. ROUCH
Attorney-Adviser
U.S. Environmental Protection Agency
 Region 4
61 Forsyth Street S.W.
Atlanta, Georgia 30303

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR THE STATE OF ALABAMA:

LUTHER STRANGE
Attorney General

Date:   3/2/12

ROBERT D. TAMBLING
Assistant Attorney General and
Chief, Environmental Section
501 Washington Avenue
Montgomery, Alabama 36104

FOR THE ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT:

Date:   3-7-12

S. SHAWN SIBLEY
Assistant Attorney General
Alabama Department of Environmental Management
Post Office Box 301463
Montgomery, Alabama 36130-1463

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR THE SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL:

Date: 3/24/12

ROBERT W. KING, JR., P.E.
Deputy Commissioner
Environmental Quality Control
South Carolina Department of Health and Environmental Control
2600 Bull Street
Columbia, SC  29201

Date: 2/22/2012

NANCY L. ROBERTS
Staff Counsel
Office Of General Counsel
South Carolina Department of Health and Environmental Control
2600 Bull Street
Columbia, SC  29201

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR DEFENDANT LAFARGE NORTH AMERICA, INC.:

Robert Fiolek
Co-Chief Financial Officer, Lafarge North America Inc.


The following is the name and address of Defendant Lafarge North America, Inc.'s agent for service pursuant to Paragraph 165.

Steven C. Kohl
Warner Norcross & Judd LLP
2000 Town Center
Suite 2700
Southfield MI 48075-1318

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR DEFENDANT LAFARGE MIDWEST, INC.:

_____

Robert Fiolek
Vice President , Lafarge Midwest, Inc.

The following is the name and address of Defendant Lafarge Midwest, Inc.'s agent for service pursuant to Paragraph 165.

Steven C. Kohl
Warner Norcross & Judd LLP
2000 Town Center
Suite 2700
Southfield MI 48075-1318

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR DEFENDANT LAFARGE BUILDING MATERIALS, INC.:

_____

Robert Fiolek
Chief Financial Officer, Lafarge Building Materials Inc.

The following is the name and address of Defendant Lafarge Building Materials, Inc.'s agent for service pursuant to Paragraph 165.

Steven C. Kohl
Warner Norcross & Judd LLP
2000 Town Center
Suite 2700
Southfield MI 48075-1318

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR DEFENDANT ARGOS USA CORP.:

_____
Eric Flesch, Vice President

The following is the name and address of Defendant Argos USA Corp.'s agent for service pursuant to Paragraph 165.

Mark C. Prybylski
Argos USA Corp.
12735 Morris Road Ext., Suite 300
Alpharetta, GA 30004

Signature Page for *United States of America* et al *v. Lafarge North America, Inc.,* et al. Second Amendment to Consent Decree

FOR DEFENDANT ARGOS CEMENT LLC:

_____
Eric Flesch, US Region Vice President

The following is the name and address of Defendant Argos Cement LLC's agent for service pursuant to Paragraph 165.

Mark C. Prybylski
Argos USA Corp.
12735 Morris Road Ext., Suite 300
Alpharetta, GA 30004